IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| J. CONSTANCIO ZAPATA, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-98-K (BH) |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order No. 3-251*, this case was automatically referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation for disposition. Before the Court are *Plaintiff, J. Constancio Zapata's, Motion for Summary Judgment* with memorandum in support ("Mot."), filed October 15, 2007; and *Defendant's Memorandum in Response to Plaintiff's Memorandum in Support of Motion for Summary Judgment and in Support of Motion for Summary Judgment* ("Resp."), filed December 7, 2007. Plaintiff did not file a reply. After consideration of the evidence and applicable filings, the Court recommends that Plaintiff's motion for summary judgment be **GRANTED,** Defendant's motion be **DENIED**, and the case be remanded for further proceedings.

**I. BACKGROUND**[1]

**A.    Procedural History**

J. Constancio Zapata ("Plaintiff") seeks judicial review of a final decision by the

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

- 1 -

Commissioner of Social Security ("Commissioner") denying his claim for supplemental security income under Title XVI of the Social Security Act. On August 18, 2005, Plaintiff filed an application for disability benefits. (Tr. at 64-71). Plaintiff claimed he has been disabled since August 15, 2005, due to diabetes, high blood pressure, and high cholesterol. (Tr. at 64, 115). Plaintiff's application was denied initially and upon reconsideration. (Tr. at 22-23). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 36). A hearing, at which Plaintiff personally appeared and testified, was held on June 8, 2006. (Tr. at 148-66). On July 21, 2006, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 11-21). The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. at 3-7). Thus, the ALJ's decision became the final decision of the Commissioner. (Tr. at 3). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on January 16, 2007.

**B.    Factual History**

    **1.    Age, Education, and Work Experience**

Plaintiff was born on February 17, 1945. (Tr. at 64). At the time of the hearing before the ALJ, he was 61 years old. (*See* Tr. at 148). He completed the third grade. (Tr. at 119). His past relevant work experience included work as a machine operator in a saddlery. (Tr. at 116). Plaintiff last worked on August 15, 2005. *Id.*

    **2.    Medical Evidence**

The scant medical evidence in this case consists primarily of nineteen pages of records from the Greenville Medical Center in Greenville, Texas, over a period of approximately two years.

Plaintiff's medical records from December 30, 2003, indicate that he suffered from diabetes mellitus, high blood pressure, high cholesterol, and dermatitis. (Tr. at 144-45). On this date, Plaintiff was 5"5" tall, weighed 165 pounds, and had a body mass index ("BMI") of 27.5.[2] (Tr. at 144). A laboratory analysis of his blood showed a glucose level of 440 mg/dL, which is far above the normal range of 65 - 109 mg/dL. (Tr. at 146). Plaintiff was unsure of the names of his prescription medications, (Tr. at 145), but subsequent medical records show that he took Avandia, Glucotrol, and Glucophage to control his diabetes. (*See e.g.*, Tr. at 128, 132). Over the course of the next fifteen months, Plaintiff's medical records show consistently elevated glucose levels and a BMI that increased to 31. (Tr. at 134-35, 140-41).

On March 18, 2005, the medical records show a BMI of 29 and a diagnosis of diabetes mellitus and hypertension. (Tr. at 132). The medical records also note that Plaintiff had been out of Avandia, a prescription medication used to control diabetes, for two weeks. *Id*. Plaintiff's treatment plan included prescription medications and a referral for compliance education regarding his diabetes and hypertension. (Tr. at 132-33).

On August 2, 2005, Plaintiff returned to the Greenville Medical Center with a complaint of dizziness and abdominal pain. (Tr. at 130). The medical record notes that Plaintiff had been out of all of his medications for the past two weeks and that Plaintiff's BMI was 29. His lungs were wheezing and tight on examination, and he was diagnosed with a bronchospasm.[3] When Plaintiff returned on September 1, 2005, his bronchospasm had resolved. (Tr. at 129). The medical record

---

[2]BMI is a measure of body fat based on height and weight. *See* National Heart Lung and Blood Institute, Calculate Your Body Mass Index. A person with a BMI of 18.5 to 24.9 is of normal weight; 25-29.9 is overweight; greater than 30 is obese. *Available at* http://www.nhlbisupport.com/bmi/ (last visited May 9, 2007).

[3]A bronchospasm is a constriction of the air passages of the lung by spasmodic contraction of the bronchial muscles. Medical Dictionary, U.S. National Library of Medicine, *available at* http://www.nlm.nih.gov (last visited May 9, 2008).

from this date shows a BMI of 29, a glucose level of 352 mg/dL, and a diagnosis of diabetes mellitus. (Tr. at 129, 136).

As part of Plaintiff's application for supplemental security income, a state agency medical consultant ("SAMC") reviewed Plaintiff's medical records on October 18, 2005. (Tr. at 143). The SAMC noted that the medical record presented no evidence of end-organ damage and that Plaintiff was not credible. *Id.* The SAMC determined that Plaintiff had non-severe impairments. *Id.* A different SAMC affirmed this opinion on February 7, 2006. (Tr. at 142).

### 3. Hearing Testimony

A hearing was held before the ALJ on June 8, 2006. (Tr. at 148-66). Plaintiff appeared personally and was represented by an attorney. (Tr. at 148). Both Plaintiff and his witness, his long-time girlfriend, spoke through an interpreter. *Id.*

#### *a. Plaintiff's Testimony*

Plaintiff testified that he lived in a house with his wife and 23-year old son. (Tr. at 153). He testified that he stopped working as a saddle maker in June of 2005 because he felt very ill from his diabetes and that he was only able to work five to six hours a day. (Tr. at 154). He testified that he was always compliant with his medications and that he felt the same as when he stopped working. (Tr. at 154-55). He stated that he had good days and bad days and that he believed his diabetes made him feel bad. (Tr. at 155).

Plaintiff testified that he did not do any chores around the house. *Id.* The ALJ remarked that Plaintiff wrote on his daily activity questionnaire that he and his wife split the household chores. (Tr. at 156; *see* Tr. at 93-100). The ALJ then stated, "I think with such blatant contradictions like that, I think I don't have any more questions cause I don't think I'm going to get anything useful." (Tr. at 156).

Under examination from his attorney, Plaintiff said that he sometimes swept or helped his wife with the dishes. *Id*. The ALJ interjected that Plaintiff was "making it worse." *Id*. Plaintiff testified that he spent most of the day sleeping and that he was not always able to afford his medications, although he could sometimes get them for free from his health clinic. (Tr. at 157). He testified that without his medication, he felt worse, got dizzy and had blurred vision, and his bones hurt. *Id*. He also testified that he had weakness in his hands and that he had difficulty handling items and lifting more than 20 pounds. (Tr. at 158-59). He testified that he does not visit any friends but that he went to church every other week and that he can only stand for two or three hours before he needed to sit down. (Tr. at 160).

Under reexamination by the ALJ, Plaintiff testified that he also worked as a delivery driver for a medical parts supplier for two years. (Tr. at 160-62).

### *b.     Witness Testimony*

Ms. Montalongo testified that she was not married to Plaintiff but had been in a relationship with him for 36 years, and that they lived in the same house. (Tr. at 163). Ms. Montalongo testified that Plaintiff slept most of the day, but that he sometimes performed chores such as making coffee, taking out the trash, and some yard work. (Tr. at 163-64). She also testified that Plaintiff could walk and get up, but he told her he was not feeling well. (Tr. at 164). She also testified that Plaintiff's conditioned had worsened over the past year, and that they sometimes had difficulty paying for the medications. (Tr. at 165).

## C.     **ALJ's Findings**

The ALJ denied Plaintiff's application for benefits by written opinion issued on July 21, 2006. (Tr. at 11-21). The ALJ found that Plaintiff had not engaged in substantial gainful activity at any time since the alleged onset date of August 15, 2005. (Tr. at 19, ¶1). The ALJ found that

Plaintiff had the medically determinable impairments of diabetes mellitus, hypertension, and elevated cholesterol. (Tr. at 19, ¶2). The ALJ also found that Plaintiff's diabetes was poorly controlled and that he was "slightly overweight" with a BMI of 31. (Tr. at 19). However, the ALJ determined that Plaintiff did not have a severe impairment due to the medical evidence, the inconsistencies in the record, and lack of credibility. (Tr. at 20, ¶3; *see* Tr. at 20-21). Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Social Security Act, at any time through the date of his decision. (Tr. at 21, ¶4).

## II. ANALYSIS

### A.  Legal Standards

#### 1.  Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program

is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id*. Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id*.

2. **Disability Determination**

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.  Issues for Review**

Plaintiff presents the following issues for review:

(1)  The ALJ erred in finding that Plaintiff does not have a severe impairment; and

(2)  The ALJ erred in failing to develop the record regarding Plaintiff's mental impairment.

(Mot. at 1).

**C.  Issue One: Severe Impairment**

The first issue raised by Plaintiff is whether the ALJ erred in finding that he did not suffer from a severe impairment. (Mot. at 3).

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or

combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Fifth Circuit has held that a literal application of this regulation would be inconsistent with the Social Security Act because the regulation includes fewer conditions than indicated by the statute. *Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985). Accordingly, in the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Id*. at 1101. Additionally, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Id*. at 1104. To ensure that the regulatory standard for severity does not limit a claimant's rights, the Fifth Circuit held in *Stone* that it would assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Id.* at 1106; *accord Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Eisenbach v. Apfel*, 2001 WL 1041806, at *6 (N.D. Tex. Aug. 29, 2001) (Boyle, J.). Notwithstanding this presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Unless the correct standard of severity is used, the claim must be remanded to the Secretary for reconsideration. *Stone*, 752 F.2d at 1106.

In this case, the ALJ explicitly stated that he evaluated Plaintiff's medically determinable impairments under the standards set forth by the Fifth Circuit in *Stone*. (Tr. at 20). A review of the ALJ's narrative discussion of the step 2 determination, however, shows that he did not properly apply the *Stone* standard. First, the ALJ based his decision in part on Social Security Ruling ("SSR") 96-4p. (Tr. at 20). Social Security Ruling 96-4p provides that "a 'symptom' is not a

'medically determinable physical or mental impairment' and no symptom by itself can establish the existence of such an impairment." 1996 WL 374187, at *1 (S.S.A. July 2, 1996). Plaintiff did not rely upon his symptoms of fatigue, dizziness, blurred vision, and difficulty handling objects to establish a step 2 impairment; he presented objective, tangible medical evidence in the form of laboratory findings and medical diagnoses that he suffered from diabetes mellitus, hypertension, elevated cholesterol, and obesity. *See e.g.*, Tr. at 129, 144-45; 20 C.F.R. § 416.928. Second, the ALJ stated that Plaintiff's physical impairments were "minimal" and that his diabetes and hypertension had not resulted in end organ damage, neuropathy, retinopathy, or kidney failure. (Tr. at 21). This reasoning applies a step 3 listing requirement to the step 2 determination of a severe impairment. *See* 20 C.F.R. § 404.1525 (listed impairments are those that are severe enough to prevent an individual from doing any gainful activity); 20 C.F.R. Pt. 404, Subpt. P. App. 1, §§ 4.00, 9.08 (listings for cardiovascular system impairments and diabetes mellitus). Third, the ALJ neglected to consider obesity as a severe impairment even though he noted Plaintiff had a BMI of 31.[4] (*See* Tr. at 19, 21); SSR 02-1p, 2000 WL 628049, at *3-4 (S.S.A. Sep. 12, 2002) (obesity, which is defined as a BMI of greater than 30, must be considered in the sequential evaluation process).

Defendant contends that the ALJ did not err because he properly referenced the *Stone* standard in the body of his decision. (Resp. at 4). A reference to the *Stone* decision or the Fifth Circuit's construction of a severe impairment is insufficient by itself; the Court must also look

---

[4]SSR 02-1p provides that at step 2, "obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." 2000 WL 628049, at *4. No specific level of weight, BMI, or descriptive term establishes whether obesity is a "severe" impairment for disability purposes. *Id.* The Court notes that although some of Plaintiff's medical records show a BMI of 31, (Tr. at 134-35), the records most relevant to the time of his application show a BMI of 29. (Tr. at 129-30). Pursuant to SSR 02-1p, however, the ALJ must consider an applicant's weight over time. 2000 WL 628049, at *4.

beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Defendant also contends that Plaintiff did not meet his burden to establish a severe impairment. (Resp. at 4-5, 8-9). As noted above, although the medical record is brief, Plaintiff presented objective medical evidence that at the time of his application, he suffered from diabetes mellitus, hypertension, elevated cholesterol, and obesity, as well as associated physical symptoms that had more than a minimal effect on his ability to work. (Tr. at 129, 152-53, 157-59). Plaintiff therefore met his burden at step 2 to show that he suffered from a severe impairment. Defendant also asserts that the ALJ's determination of a lack of a severe impairment is consistent with the findings of the SAMCs. (Resp. at 6). While the ALJ's determination is consistent with that of the SAMCs, this is an inappropriate basis for a step 2 determination because there is no indication from the SAMCs' case assessment forms that they applied the Fifth Circuit's standard of a severe impairment. *See* Tr. at 142-43; *Stone*, 752 F.2d at 1101.

For the foregoing reasons, the Court finds that although the ALJ referenced *Stone* in his decision, this citation was the use of "magic words." *Hampton*, 785 F.2d at 1311. The ALJ therefore failed to analyze Plaintiff's medically determinable impairments at step 2 in accordance with the standard articulated by the Fifth Circuit. *Stone*, 752 F.2d at 1106. Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)). However, the ALJ's failure to apply the *Stone* standard was a legal error, not a procedural error. The Fifth Circuit left the lower courts no discretion to determine whether such an error was harmless. Rather, the court mandated that "[u]nless the correct standard is used, the claim *must* be remanded to the

Secretary for reconsideration." *Stone*, 752 F.2d at 1106 (emphasis added).[5] Because remand is required for an error at step 2, the Court does not consider Plaintiff's second issue for review.

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that Plaintiff's motion for summary judgment be **GRANTED** and that Defendant's motion for summary judgment be **DENIED**. The Court recommends that the decision of the Commissioner be **REVERSED** and the case be **REMANDED** for reconsideration.

On remand the ALJ must, as a part of his step two analysis, determine whether Plaintiff's diabetes mellitus, hypertension, elevated cholesterol, and obesity constitute severe impairments. If the ALJ determines that these impairments are severe, the ALJ should proceed through the sequential steps of the disability determination process.

**SO RECOMMENDED**, on this 13th day of May, 2008.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[5]In Plaintiff's second issue for review, he alleges that the ALJ failed to develop the record as to his mental impairment. The record as a whole is poorly developed. Plaintiff presented some evidence of medically determinable impairments and a limited ability to work. A consultative examination, while within the discretion of the ALJ, would have been helpful in developing a full and fair record. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (a consultative examination may be necessary to develop a full and fair record, but the discretion to order on is within the ALJ's discretion); *see* 20 C.F.R. § 404.1517 (Commissioner may pay for physical or mental examinations or tests if the medical record is insufficient to determine disability); *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (the ALJ has a duty to fully and fairly develop the facts relevant to a claim for benefits). Since the record was inadequately developed, the ALJ's step 2 determination lacked substantial evidence. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (if the ALJ does not satisfy his duty to fully and fairly develop the facts, his decision is not substantially justified).

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

      Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

                                              IRMA CARRILLO RAMIREZ
                                            UNITED STATES MAGISTRATE JUDGE